**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY**

Dawn Gilronan,                    )
                                  )
    Appellant,                )
                                  )
v.                                )    Case No. CPU4-18-005618
                                  )
Joe Birmingham,                   )
                                  )
    Appellee.                 )

Submitted: September 18, 2019
Decided: January 17, 2020

Donald L. Gouge Jr., Esq.
800 N. King Street, Suite 303
Wilmington, DE 19801
*Attorney for Birmingham/Appellee*

William D. Sullivan Esq.
901 N. Market Street, Suite 1300
Wilmington, DE 19801
*Attorney for Gilronan/Appellant*

**DECISION AFTER TRIAL**

**SMALLS, C.J.**

## FACTUAL AND PROCEDURAL HISTORY

This is a de novo appeal from the Justice of the Peace Court pursuant to Court of Common Pleas Civil Rule 72.3 which involves a dispute regarding the sum of Thirteen Thousand dollars ($13,000.00). Plaintiff below/Appellee, Joe Birmingham, ("Birmingham"), alleges the sum represents a loan for which repayment is required. Defendant below/Appellant, Dawn Gilronan, ("Gilronan"), alleges the funds in dispute was a gift with no anticipation of repayment.

On September 18, 2019, a bench trial was held. During trial, Birmingham, and several other witnesses, testified in support of his position. Additionally, Birmingham submitted multiple exhibits including bank statements, evidencing the transfer of the funds, and emails where he sought repayment from Gilronan that went unanswered. Gilronan testified but did not present any additional witnesses, she denied the allegation that there were any discussions regarding repayment of the $13,000. Gilronan submitted exhibits regarding her mortgage payments and satisfaction and texts messages from Birmingham to a third person who did not testify at trial. Based upon the testimony and exhibits, I find the relevant facts as set forth below.

Prior to the dispute, Birmingham and Gilronan were in a relationship for approximately 1 ½ years starting in 2013 and ending in July of 2015. In December of 2013, Birmingham and Gilronan had discussions regarding Gilronan moving out

1

of her current home and buying a house in North Wilmington. Birmingham suggested that Gilronan reduce her debt in order to enhance her possibility of qualifying for a mortgage. According to Birmingham, during these discussions he agreed to help Gilronan pay down her credit card debt, as long as she paid him back when she was in the house and "settled". Thereafter, Birmingham provided Gilronan with his bank account information, which Gilronan subsequently used to pay $13,000 in credit card debt in two installment on two different credit cards. Birmingham stated that although there was no exact repayment date, he expected to be paid back within one year. Further, Birmingham testified he did not claim this transfer as a gift on his income taxes.

In November 2014, Gilronan purchased a house in North Wilmington, Delaware for $249,000. In July 2015, the relationship ended between Birmingham and Gilronan. Thereafter, on February 16, 2016, Birmingham testified he made his first request for repayment when he sent Gilronan an email to her personal email account, to which Gilronan did not respond. On February 24, 2016, Birmingham testified he made a second request for repayment in the same manner by sending an email to Gilronan's personal account. On March 2, 2016, Birmingham sent a third request seeking repayment, but this time the request was sent to Gilronan's work email. Birmingham testified he then sent several additional emails seeking repayment, to Gilronan's work email on March 7, 11, and 15, 2016. Gilronan did

not respond to any of these requests. However, she testified that she does not remember seeing the emails sent to her personal account but does remember seeing the emails sent to her work account.

During trial, several witnesses called by Birmingham testified as to their individual conversations with Birmingham regarding the $13,000 exchange between Birmingham and Gilronan. Mark Levere, Karynne Henry, and Joe Slank all stated that they had a conversation with Birmingham sometime before or shortly after Gilronan moved into the North Wilmington house, in which he stated he loaned Gilronan money.

Gilronan testified as to her recollection of the events surrounding her receipt of the $13,000 and indicated there were no conversations regarding repayment. Gilronan did not call any additional witnesses to testify on her behalf to support her position. At trial, Gilronan stated that she believed the $13,000 was a gift, however, when questioned on cross examination, she indicated that she did testify to this fact when the matter was before the Justice of the Peace Court but never said this prior to the initial trial. After making several renovations, she sold the North Wilmington house for $349,000 on August 11, 2017, $100,000 more than the purchase price.

## PARTIES' CONTENTIONS

Birmingham asserts that a contract was formed when he loaned Gilronan the money, which was subsequently used to pay off her debt. Further, it is Birmingham's position that the Statute of Frauds does not apply because there was a possibility of the loan being repaid within one year. Lastly, Birmingham argues that Gilronan's failure to raise the Statute of Limitations, which is an affirmative defense, in her Answer and at the Justice of the Peace Court constitutes a waiver of such defense.

Gilronan admits using Birmingham's bank information to pay off two of her credit card accounts in the amount of $6,500 each. However, Gilronan avers that she never promised to pay the money back, and she understood the $13,000 to be a gift. Gilronan states that Birmingham is only seeking repayment because their relationship ended. Further, Gilronan asserts that Birmingham's claim is barred from suit by both the Statute of Frauds and the Statute of Limitations.

## Discussion

As trier of fact, the Court is to assess the credibility of the witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their

---

[1] *Nat'l Grange Mut. Ins. Co. v. Davis et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl.).

4

testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[2]

In civil cases, "a Plaintiff has the burden of proving the elements of their case by a preponderance of the evidence.[3] Proof by a preponderance of the evidence means proof that something is more likely than not."[4] "The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[5]

The Court finds that an enforceable contract was formed between the parties and that said contract was breached when Gilronan failed to make repayment and subsequently repudiated the contract. Further, the Court finds that Gilronan's failure to assert the defense in her pleadings constitutes waiver of her Statute of limitations defense[6] and the Statute of Frauds is not applicable.

## I.  Breach of Contract

To succeed on a breach of contract claim, the Plaintiff must show: "(1) a contractual obligation; (2) a breach of the obligation imposed by the contract; and (3) resulting damages."[7] Because the existence of a contractual obligation is an

---

[2] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl.).
[3] *Narayan v. Sutherland Global Holdings Inc.*, 2016 WL 3682617, at *8 (Del. Ch.) (internal citations omitted).
[4] *Id.*
[5] *Trumbo v. LST Investments*, 2015 WL 8200712, at *3 (Del. Com. Pl.) (internal citations omitted).
[6] CCP Civ. R. 8.
[7] *SARN Energy LLC v. Tatra Def. Vehicle a.s.*, 2018 WL 5733385, at *3 (Del. Super.).

element to a breach of contract action, the Court must first analyze whether a contract was established between the two parties.

## A. A Contractual Obligation Existed

Matters concerning the formation of a contract are questions of fact.[8] A valid contract exists if: "(1) the parties intended that the contract would bind them; (2) the terms of the contract are sufficiently definite; and (3) the parties exchange legal consideration."[9] Unless the Statute of Frauds apply, "an oral agreement is perfectly enforceable so long as these elements are proven by a preponderance of the evidence."[10]

In determining whether the parties intended to be bound by an oral agreement, the Court should look to "objective manifestations of assent" and the "surrounding circumstances" that evidences the parties' intentions.[11] Therefore, overt manifestations and not a party's subjective intent determines whether a contract has been formed.[12] Birmingham stated that when he provided Gilronan with his bank account information, he told Gilronan that he wanted to be paid back once she was in the house and settled. Although Gilronan claims she didn't promise to pay the

---

[8] *Sheets v. Quality Assured, Inc.*, 2014 WL 4941983, at *2 (Del. Super.).
[9] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).
[10] *Sheets*, 2014 WL 4941983, at *2.
[11] *Stone Creek Custom Kitchens & Design v. Vincent*, 2016 WL 7048784, at *3 (Del. Super.).
[12] *Sheets*, 2014 WL 4941983, at *2; *Ripsom v. Beaver Blacktop, Inc.*, 1988 WL 32071, at *10 (Del. Super.), aff'd, 567 A.2d 418 (Del. 1989) ("the law is concerned with the external manifestations of the parties rather than their undisclosed mental state, and it is enough that one party manifests an intention to induce the other's response and to be induced by it, and that the other responds in accordance with the inducement.").

6

money back, Gilronan did subsequently use Birmingham's bank account funds to pay down her credit debt. Based on the following factors, i.e. the fact that the parties were in a new relationship, the fact that the funds were used to facilitate the acquisition of property in her name, and Gilronan's use of Birmingham's bank account information after he told her his terms of its use, I find these support a conclusion that there exist an anticipation of repayment.

Next, Gilronan argues that because the agreement was to repay the loan once Gilronan was "settled in the house", such terms are not sufficiently definite to form a contract. The Court will deny the existence of a contract only if the terms "are so vague that a Court cannot determine the existence of a breach."[13] "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[14] When construing the meaning of an oral contract, a Court must look to surrounding circumstances and the parties' course of dealing in order to ascertain their intent.[15]

Because of their ongoing relationship, when Birmingham loaned Gilronan the money, he was acutely aware of her overall financial situation. She was in debt and was being forced out of her home by her ex-husband. Based on the circumstances surrounding the loan I find that the term "in the house and settled" means that

---

[13] *Bryant v. Way*, 2011 WL 2163606, at 4 (Del. Super.); Cont'l Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1230 (Del. Ch. 2004).
[14] *Osborn ex rel.*, 991 A.2d at 1159 (Del. 2010)
[15] *Sheets*, 2014 WL 4941983, at *2.

Gilronan was to repay the loan when she moved into a new house and was in a better position to manage her finances.

Further, even if the parties did not reach an agreement as to the time of repayment, and the Court was not able to determine the meaning of the term, it would not be fatal to the Birmingham's claim. Specifying the time for payment is not material to contract formation.[16] As the Superior Court has stated:

> "Without an express term providing for the timing of payment, it falls to the Court to supply an appropriate term. When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court. [W]here there is in fact no agreement [to a particular term], the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process. If no time for performance is fixed, the court will imply a reasonable time ...."[17]

In the absence of a repayment term, I find based upon the testimony that repayment of the $13,000 was to be made within a reasonable time after Gilronan purchased a new house and was settled. In this instance, the purchase and the sale of the house has occurred, thus it is only reasonable that payment is presently due.

Lastly, I find that the parties exchanged legal consideration. Consideration for a contract must be "bargained for" between the parties and can be either a "benefit to the promisor or a detriment to the promisee."[18] Further, a return promise is

---

[16] *Stone Creek*, 2016 WL 7048784, at *4.
[17] *Id.* at *4 (finding that repayment should be made in a reasonable time)(internal quotations omitted).
[18] *Bryant*, 2011 WL 2163606, at *5.

8

considered "bargained for if it is "sought by the promisor in exchange for [their] promise and is given by the promisee in exchange for that promise."[19] "Where a contract is executory, the promises of each party to perform the contract supply the consideration necessary to support the contract."[20] The Court limits its inquiry into consideration to its existence and not whether it was fair or adequate or sufficient.[21] In this case, both parties exchanged promises. Birmingham promised to lend Gilronan $13,000 so she could pay off her debt, in exchange for Gilronan's return promise that she would repay the money. I find that this is sufficient consideration to establish the formation of a contract between the parties.

In sum, the testimony and exhibits prove that a valid contract existed between Birmingham and Gilronan. Gilronan's use of Birmingham's bank information constitutes an overt manifestation of assent. The terms of the contract, when viewed objectively in light of the surrounding circumstances are sufficiently definite. Lastly, the parties' exchange of promises constitutes legal consideration.

## B. A Breach

A breach of contract occurs by a party's non-performance, repudiation, or both.[22] Further, a contract is also breached when a party "fails to make payment by

---

[19] *Ripsom*, 1988 WL 32071, at *10 (Del. Super.), aff'd, 567 A.2d 418 (Del. 1989).
[20] *Id.*
[21] *Osborn ex rel.*, 991 A.2d at 1159.
[22] *Preferred Fin. Servs., Inc. v. Bus. Builders for Entrepreneurs, LLC*, 2016 WL 4537759, at *3 (Del. Com. Pl.).

the date required under the agreement between the parties."[23] A breach occurs when a party abandons their duties under the contract or fails to complete the contract in a reasonable time. [24] As discussed above, because there was no exact repayment date for the loan, Gilronan was supposed to make repayment on the loan within a reasonable time. Over five years has elapsed since the Birmingham originally loan Gilronan $13,000. I concludes that Gilronan has failed to make repayment within a reasonable time.

### C. Resulting Damages.

"A party harmed by a breach of contract is entitled to compensation that will place that party in the same position that the party would have been in if the other party had performed under the contract."[25] Had Gilronan repaid the money, Birmingham would have received the $13,000. Because of Gilronan's refusal to pay, Birmingham is now without the $13,000 that he loaned Gilronan. I conclude that Gilronan's breach has resulted in damages to the Birmingham.

### II.    Gilronan's Affirmative Defenses

### A. Statute of Limitations

Under 10 Del. C. §8106, there is a three year statute of limitations for claims arising out of an alleged breach of contract.[26] The statute begins to run when the

---

[23] *Id.* at *3.
[24] *Lee-Scott* v. *Shute*, 2017 WL 1201158, at* 6 (Del. Com. Pl.).
[25] *Optical Air Data Sys., LLC* v. *L-3 Commc'ns Corp.*, 2019 WL 328429, at *4 (Del. Super.).
[26] 10 *Del. C.* §8106.

contract has been breached.[27] For a loan agreement that fails to set a payment date, the "statute of limitations begins to run a reasonable time after the loan is made."[28] "This general rule is consistent with the principle in contract law that "where no time for performance is fixed, the Court will imply a reasonable time for performance.""[29]

Birmingham argues that because Gilronan has failed to raise the Statute of Limitations defense prior to trial, it is deemed waived. The Statute of Limitations is an affirmative defense which must be raised in the responsive pleading.[30] A party's "failure to timely assert an affirmative defense generally constitutes a waiver of the right to do so."[31] However, Courts have been lenient with litigants who fail to raise the defense in their initial answer by allowing parties to subsequently assert the defense at a later time. The Superior Court has held:

> "The purpose of requiring the Defendant to plead a limitations defense in the answer "is to avoid surprise and undue prejudice by providing the Plaintiff with notice and the opportunity" to rebut the defense. However, because the rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits, rigid adherence to the requirement of pleading a limitations defense in the answer is not always necessary. That is, a limitations defense does not necessarily have to be raised in the answer. Rather, [c]onsistent with the purpose of Rule 8(c), courts

---

[27] *Petroleum* v. *Magellan Terminals Holdings, L.P.*, 2015 WL 3885947, at 10 (Del. Super.).
[28] *Alonso* v. *Maldonado*, 2015 WL 7068206, at 2 (Del. Super.).
[29] *Id.*
[30] *Lee* v. *Linmere Homes, Inc.*, 2008 WL 4444552, at 2 (Del. Super.); *See* CCP Civ. R. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively… statute of limitations."); CCP Civ. R. 12(b) ("Every defense, in law or fact, to a claim for relief in any pleading… shall be asserted in the responsive pleading thereto if one is required.").
[31] *395 Assocs., LLC* v. *New Castle Cty.*, 2006 WL 2021623, at *9 (Del. Super.) ("The Court agrees that the statute of limitations as an affirmative defense can be waived.").

11

require that Defendants assert a limitations defense as early as reasonably possible. That does not imply that a limitations defense can be raised at any time but, instead, suggests that the Defendant assert the defense in a timely manner so as to promote judicial economy and avoid surprise and undue prejudice to the Plaintiff."[32]

In *Abdi* the Superior Court was required to decide whether a Defendant was permitted to raise the Statute of Limitations as an affirmative defense after failing to do so in his initial Answer.[33] In a motion to dismiss, the Plaintiff in *Abdi* argued that by not raising the Statute of Limitations as an affirmative defense, the Defendant waived his right to do so.[34] In adhering to the purpose of pleading and deciding a case on its merits, the Superior Court allowed the Defendant to assert a Statute of Limitations defense reasoning that the Defendant asserted the defense "as early as reasonably possible" and filed a timely Motion for Leave to Amend its Answer so as to not surprise or prejudice the Plaintiff.[35]

Unlike the Defendant in *Abdi*, Gilronan in this case did not amend her answer to raise the Statute of Limitations defense, nor was it raised it in the pre-trial scheduling order, and nor did Gilronan raise this defense at trial at the Justice of the Peace Court. Gilronan only asserted this defense after trial during closing statements. Raising the defense at this late time does not constitute raising it "as early as

---

[32] *Abdi* v. *NVR, Inc.*, 2007 WL 2363675, at *2 (Del. Super.), aff'd, 945 A.2d 1167 (Del. 2008) (internal citations and quotations omitted).
[33] *Id.*
[34] *Id.* at 2.
[35] *Id.*

reasonably possible". Therefore, I find that Gilronan has waived her Statute of Limitations defense.

## B. Statute of Frauds

Lastly, Gilronan argues that the statute of frauds prohibits Birmingham from bringing a claim under the alleged oral contract. Delaware's Statute of Frauds prohibits enforcement of an oral agreement that is "not to be performed within the space of 1 year from the making thereof" unless the contract is reduced to writing and signed by the party against whom enforcement is sought.[36] The time begins to run from the date the contract is entered into and not from the time performance is to begin.[37] If there is any possibility that such contract can be performed within one year, then the Statute of Frauds is inapplicable and the agreement need not be in writing.[38] Further, under Civil Rule 8(c), the Statute of Frauds is an affirmative defense, which must be plead in the responsive pleadings or it is deemed waived.[39]

Gilronan contends that the Statute of Frauds bars recovery, because it would have been impossible for Gilronan to pay back the $13,000 within 1 year of forming the contract due to the slow accumulation of equity in the home. Gilronan introduced reports into evidence that showed that equity in the home was only building at a rate of $270-$280 per month. However, during Birmingham's testimony he stated that

---

[36] 6 *Del. C.* §2714; *World Class Wholesale, LLC* v. *Star Indus., Inc.* 2018 WL 2331991, at 1 (Del. Super.).
[37] *Aurigemma* v. *New Castle Care LLC*, 2006 WL 2441978, at 2 (Del. Super.).
[38] *World Class*, 2018 WL 2331991, at *1 (Del. Super.).
[39] CCP Civ. R. 8(c).

Gilronan was supposed to pay him back when she was "in the house and settled." The terms of contract did not mandate that money had to come from the equity in the house. However, even if the parties agreed that repayment was to come out of the house equity, Gilronan's argument that the actual amount of equity accumulation was insufficient to satisfy the loan within 1 year is irrelevant because the Court does not look to the actual amount of equity when making its determination of whether the contract could have been completed in a year. The Court looks to the reasonable expectations of the parties *at the time of the formation of the contract*.[40] To put differently if the parties reasonably expected that the contract would be completed within 1 year in accordance with their terms, then the Statute of Frauds is inapplicable. From the perspective of the parties at the time of contract formation, I conclude that it would have been reasonable for the parties to think that Gilronan could have gotten settled in the house and repaid the $13,000 back within a year of the contract being formed.

## CONCLUSION

I find that the parties' actions constituted a binding agreement for payment of the $13,000 to be made in a reasonable time. Further, I find that Gilronan breached that agreement by failing to repay the loan and repudiating the agreement. Lastly, I

---

[40] *Haveg Corp.* v. *Guyer*, 211 A.2d 910, 912 (1965) ("the statute [of frauds] does not extend to an agreement which may by any possibility be performed within a year, in accordance with the understanding and intention of the parties at the time when the agreement was entered into").

14

find that Gilronan failed to raise the statute of limitations defense timely and the statute of frauds does not bar recovery.

Accordingly, I find that Birmingham has proven by a preponderance of the evidence that the $13,000.00 constituted a loan to Dawn Gilronan for which repayment is required.

Judgment is entered for Joe Birmingham for $13,000.00, cost and post judgment interest at the legal rate until paid.

Alex J. Smalls,
Chief Judge

**IT IS SO ORDERED.**